UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MERITAIN HEALTH, INC.,
    a New York corporation,

             Plaintiff,

vs.

EXPRESS SCRIPTS, INC.,
    a Delaware corporation,

             Defendant

Case No. 2:12-cv-00129-MAM

## ORDER

AND NOW, this ___day of _____, 2012, upon consideration of

Defendant's Motion to Dismiss, it is hereby **ORDERED** that Defendant's Motion is

**GRANTED.**

**BY THE COURT:**

_____
MARY A. MCLAUGHLIN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MERITAIN HEALTH, INC.,
    a New York corporation,

            Plaintiff,

                                Case No. 2:12-cv-00129-MAM

vs.

EXPRESS SCRIPTS, INC.,
    a Missouri corporation,

            Defendant

## DEFENDANT'S MOTION TO DISMISS

Defendant Express Scripts, Inc., ("ESI") respectfully moves to dismiss plaintiff Meritain Health, Inc.'s ("Meritain") complaint: (i) pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for failure to join an indispensable party and (ii) pursuant to Fed. R. Civ. P. 12(b)(1) because Meritain lacks standing to sue to enforce a contract to which it is not a party.  In the alternative, ESI requests that this action—with no tangible connection to the Eastern District of Pennsylvania—be transferred to the Eastern District of Missouri pursuant to 28 U.S.C. 1404(a).

In support of this Motion, ESI submits and incorporates by reference herein the attached Memorandum of Law.

1

Dated:  January 20, 2012     Respectfully Submitted,

COZEN O'CONNOR

/s/ Robert V. Dell'Osa
Robert V. Dell'Osa (Attorney No. 44281)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2745 - Telephone
(215) 665-2013 – Facsimile

HUSCH BLACKWELL LLP
Thomas M. Dee
Christopher A. Smith
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-1530
(314) 480-1500 - Telephone
(314) 480-1505 - Facsimile

*Attorneys for Defendant Express Scripts, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon Counsel of Record, this 20th day of January, 2012, to the addressees shown below:

John M. Elliott
Frederick P. Santarelli
John P. Elliott
Elliott Greenleaf & Siedzikowski, P.C.
Union Meeting Corporate Ctr. V
925 Harvest Drive
Blue Bell, PA 19422
(215)997-1000

*Plaintiff's Counsel*

/s/ Robert V. Dell'Osa
Robert V. Dell'Osa
**COZEN O'CONNOR**

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MERITAIN HEALTH, INC.,
　　a New York corporation,

　　　　　　　　Plaintiff,

vs.

EXPRESS SCRIPTS, INC.,
　　a Delaware corporation,

　　　　　　　　Defendant

Case No. 2:12-cv-00129-MAM

## EXPRESS SCRIPTS, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Express Scripts, Inc., ("ESI") respectfully submits this

memorandum of law in support of its motion to dismiss plaintiff Meritain Health,

Inc.'s ("Meritain") complaint: (i) pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for

failure to join an indispensable party and (ii) pursuant to Fed. R. Civ. P. 12(b)(1)

because Meritain lacks standing to sue to enforce a contract to which it is not a

party.  In the alternative, ESI requests that this action—with no tangible

connection to the Eastern District of Pennsylvania—be transferred to the Eastern

District of Missouri pursuant to 28 U.S.C. 1404(a).

## INTRODUCTION

Meritain is forum shopping; attempting to manufacture diversity

jurisdiction by half-heartedly recasting contract and tort claims asserted by its

affiliate, Scrip World, LLC ("SW") in a prior action filed in St. Louis County,

1

Missouri.   The claims in both actions rise and fall on a 2005 Prescription Drug Program Agreement ("PDPA") between *SW* and ESI.   Indeed, Meritain alleges that ESI is acting in breach of its confidentiality obligations under the PDPA *with SW*, and seeks an order "requiring ESI to continue to perform under the terms of the PDPA."[1]   In addition to its request for specific performance of the SW contract, Mertain seeks other relief directly on behalf of SW, asking this Court to enter an order enjoining ESI from soliciting clients of Meritain "or its affiliate Scrip World, LLC."[2]

Although the claims in the federal action are based entirely on the SW contract and SW's relationship with ESI—and seek injunctive relief on behalf of SW—SW has not been named as a party to this case.   There is a reason.   SW is a Utah LLC, whose sole member is a Delaware corporation.[3]   ESI is a Delaware

---

[1] *See, e.g.,* Meritain Compl. (Doc. No. 1) at ¶ 29 (quoting Section 5.2 of the SW PDPA and alleging that under the agreement ESI is "contractually prohibited from using confidential and proprietary information it acquired through the PDPA"); ¶ 31 ("ESI acquired virtually all of the foregoing information…through the restricted access ESI was provided under the PDPA."; ¶ 50(a) (requesting a permanent injunction "requiring ESI to continue to perform under the terms of the PDPA" with SW).  In deciding a motion to dismiss, a court may consider documents that form the basis of the claim.  *Washington v. City of Philadelphia*, No. 11-3275, 2012 WL 85480 (E.D. Pa. Jan. 11, 2012); *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *Wilkinson v. Huffy Corp.*, No.09-507, 2009 WL 2461857, 1 (E.D. Pa. Aug. 11, 2009); *see also SigmaPharm, Inc. v. Mutual Pharmaceutical Co.*, 772 F.Supp.2d 660, 663 n.5 (E.D. Pa. 2011) (where plaintiff explicitly relied on agreement in its complaint, court may properly consider entire agreement attached to defendant's motion to dismiss).

[2] Meritain Proposed Order (Doc. No. 3-1) at ¶ 1.

[3] Ex.1, SW Compl. at ¶ 1 ("SW is a Utah limited liability company whose sole member is Prodigy Health Group, Inc. ("Prodigy") and Prodigy is a Delaware corporation.").

corporation, with its principal place of business in St. Louis, Missouri.[4]  Adding
SW—the party to the contract and real party in interest—would destroy diversity
jurisdiction.[5]

Clearly, SW is a necessary and indispensable party.  This action will
determine SW's rights under the PDPA and seeks injunctive relief on SW's behalf.
And because SW is a necessary and indispensable party, whose addition would
destroy diversity jurisdiction, this action must be dismissed.  Fed. R. Civ. P. 19(b).

### STATEMENT OF FACTS

ESI is a leading pharmacy benefit manager ("PBM") headquartered in St.
Louis, Missouri.  ESI provides a full range of prescription drug benefit services to
its clients, which include employers, HMO's, health insurers, third-party
administrators, union-sponsored benefit plans, workers' compensation plans, and
government health plans.  Prescription drugs are dispensed to members of the
health plans that ESI serves primarily through retail pharmacies.  ESI establishes
and maintains retail pharmacy networks by entering into agreements with retail
pharmacies.  Pursuant to these agreements, the provider pharmacy dispenses
prescription drugs to eligible plan participants and members and is then
reimbursed by ESI at an agreed upon rate.

---

[4] Meritain Compl. (Doc. No. 1) at ¶ 4 ("Defendant, Express Scripts, Inc….is a Delaware
corporation with its principal place of business at 13900 Riverport Drive, Maryland
Heights, Missouri 63043.").

[5] *Weight Loss Servs. LP v. Herbal Magic, Inc*., No. 11-3859, 2011 WL 4402103, n.2
(E.D. Pa. Sept. 22, 2011) ("For diversity purposes, the citizenship of partnerships and
limited liability companies is the same as each of their partners or members…").

### SW and its Agreement with ESI

SW is also a PBM.[6]  On August 8, 2005, ESI entered into a Prescription Drug Program Agreement ("PDPA") with SW, by which "ESI and SW…agreed to develop an arrangement whereby SW [could] 'private label' [ESI's] PBM Services for the financial terms and conditions for such services to SW Clients. . .."[7]

The PDPA defines a "Client" as "an employer, union or self-insured health plan **that has contracted with SW** for PBM Services **under a SW Client Agreement**."[8]  "SW Client Agreement" is defined as "a written agreement between a Client and SW for the provision of PBM Services."[9]

The PDPA also defines what SW and ESI considered "Proprietary Information."[10]  ESI's "Proprietary Information" is defined as:

> [R]eporting and system applications, (web-based and other media), and system formats, databanks, clinical and formulary management operations and programs and manuals, information concerning Rebates, prescription drug evaluation criteria, drug choice management, drug pricing information, and Participating Pharmacy agreements.[11]

SW's "Proprietary Information" is defined as "SW information files, business

---

[6] Ex.1, SW Compl. at ¶ 4.

[7] Ex.2, 2005 PDPA, Recital D, attached as Ex. A to SW Compl., Ex.1 (pricing and exhibits have been omitted for this filing).

[8] *Id*., Article 1- Definitions (emphasis added).

[9] *Id*.

[10] *Id*. at Section 5.2; *see also* Meritain Compl. at ¶ 29 (including a partial citation of Section 5.2).

[11] *Id*. at Section 5.2(a).

4

operations and strategies."[12]  Both parties agreed that Proprietary Information

would not be used or disclosed to any third party "except as specifically

contemplated by" the PDPA, or upon prior written consent.[13]

Under the PDPA, the parties specifically contemplated that ESI could use

"**and/or transfer to third-parties**" any "drug and related data collected by ESI or

provided to ESI by SW and Clients for research, provider profiling and other

databases for benchmarking, drug trend, **cost analysis, cost comparisons or other**

**business purposes of ESI**."[14] The only condition that SW placed on ESI's use of

this information was that any individually identifiable protected health information

("PHI") be "de-identified in accordance with HIPAA" prior to its use or disclosure

to third-parties.[15] The parties also agreed to an explicit limitation of liability

(Section 7.2(c)), and agreed that the PDPA would be governed by Missouri law

(Section 8.5).

The PDPA remains in place and continues to govern the relationship

between ESI and SW.

---

[12] *Id*. at Section 5.2(b).

[13] *Id*.

[14] *Id*. at Section 3.4(c) (emphasis added).

[15] *Id*. (in Section 3.4(b) ESI expressly disclaimed "any liability or responsibility to SW or a Client related to the disclosure to, and use of such claims data.").  Neither SW or Meritain allege that ESI is improperly disclosing PHI in violation of this limitation.

## SW sues ESI in Missouri under the PDPA

On January 9, 2012, SW filed a lawsuit against ESI in St. Louis, Missouri.[16] The SW lawsuit alleged that ESI was improperly using Proprietary Information that ESI acquired under the PDPA to solicit SW clients.[17] In particular, SW claimed that ESI had contacted and, in some cases, submitted pricing proposals and cost analyses to SW clients that were disparaging to SW because they showed that clients could save money if they contracted directly with ESI when their contracts with SW expired.[18]  According to SW, ESI's actions violated Section 5.2 of the PDPA.[19]  The SW lawsuit included claims for breach of contract, tortious interference, unfair competition, and sought declaratory relief concerning the rights and obligations of SW and ESI under Section 5.2 of the PDPA.[20]

SW set a hearing for a temporary restraining order ("TRO"), which the parties agreed would take place on Friday, January 13, 2012.  In setting this hearing, SW's counsel agreed to forward the papers for its TRO application by Wednesday, January 11, 2012 to allow ESI's counsel time to review them in advance of the Friday hearing.  Instead, on January 11, 2012, SW voluntarily

---

[16] Ex. 1, SW Compl.

[17] *Id*.

[18] *Id*. at ¶¶ 11-14.

[19] *Id*. at ¶ 12.

[20] *Id*. at ¶¶ 16 – 38.

dismissed its claims, with no explanation.[21]

### SW's claims are re-filed in the Eastern District of Pennsylvania under the name of its affiliate, Meritain Health.

Unbeknownst to ESI at the time, on the same day SW dismissed its Missouri action, claims were re-filed in the Eastern District of Pennsylvania under the name of Meritain, a New York third party administrator ("TPA") with business ties to SW.

Although Meritain is not mentioned in the PDPA, it claims an affiliation to SW through ownership by Prodigy Health Group, Inc., a Delaware corporation.[22] The following chart illustrates the relationships at issue:



---

[21] On January 12, 2012, after learning of SW's dismissal, ESI filed a declaratory judgment action against SW in St. Louis County, Missouri, where the original action was pending.  That action seeks a declaration that ESI is not breaching the PDPA, including Section 5.2, by offering direct services to the customers previously served through SW. A copy of the pending declaratory judgment action is attached as Exhibit 3.

[22] Ex.1, SW Compl. at ¶¶ 1, 4 (explaining that Meritain is a New York TPA with ties to SW through shared ownership by Prodigy Health Group, Inc., a Delaware corporation).

Notably, the allegations and claims re-filed under the name of Meritain bear a striking resemblance to those in the SW action, dismissed earlier the same day. In fact, despite representations by Mertain's counsel that the SW action is different and "just a straight breach of contract between 2 parties," both actions include virtually identical allegations, seek essentially the same relief, and in many instances appear to be crudely cut and pasted from one complaint to the other.[23] Most importantly, however, both actions are based on the same contractual relationship between SW and ESI as established by the PDPA, both require a declaration of rights and obligations under the PDPA, and both seek to enjoin an alleged breach of the PDPA.   In fact, the only really notable change is that most of the references in SW complaint to SW clients were re-attributed hours later in the Meritain complaint to Meritain.

The following chart illustrates just a few examples of the similarities between the two complaints:

| SW Complaint | Meritain Complaint |
|---|---|
| "On August 8, 2005, SW and ESI entered into a private-label Prescription Drug Program Agreement ("PDPA") by which ESI agreed to provide prescription drug services to SW for the benefit of SW's clients."<br><br>(SW Compl. at ¶ 7). | "Specifically, on August 8, 2005, ESI entered into a private-label Prescription Drug Program Agreement ("PDPA") with SW, by which ESI agreed to provide prescription drug fulfillment and other services for the benefit of Meritain's clients."<br><br>(Meritain Compl. at ¶ 12). |
| "The PDPA was advantageous to SW's clients because they were able to leverage SW's and | "The PDPA was advantageous to the clients because they were able to leverage bulk |

---

[23] Jan. 12, 2012 Tr. at 18:23-24.   Counsel's further representation that he is "not all that familiar with" the SW complaint is even more ironic in light of the fact that the same sentences appear virtually verbatim in both complaints.  *Id*. at 18:25-19:1.

| SW Complaint | Meritain Complaint |
|---|---|
| ESI's bulk purchasing power." <br><br> (SW Compl. at ¶ 7). | purchasing power and services." <br><br> (Meritain Compl. at ¶ 15). |
| "The PDPA is non-exclusive, and SW has multiple similar relationships.  Indeed, a key element of SW's business is its ability to analyze the specific needs of each of its clients and determine which of its PBM vendors provides the best value for each client in terms of service and cost." <br><br> (SW Compl. at ¶ 8). | "The PDPA is non-exclusive, and Meritain (and SW?) utilizes multiple similar relationships for its clients.  Indeed, the PBM private label agreements are routinely analyzed to determine the best fit for each of Meritain's clients both in terms of service and cost." <br><br> (Meritain Compl. at ¶ 16) |
| "After learning that it was losing some of its SW business, ESI began a campaign to steal not only those clients from SW, but *all* of the clients for which ESI is a back-end PBM vendor." <br><br> (SW Compl. at ¶ 11). | "After learning that it was losing approximately twenty percent of its Meritain/SW business, ESI began a campaign to steal those clients, as was as all of the clients for which ESI is still a PBM vendor." <br><br> (Meritain Compl. at ¶ 23). |
| "ESI is contractually prohibited from disclosing SW's confidential and proprietary information to third parties.  Pursuant to Section 5.2 of the PDPA: <br><br> ‘Each party agrees that information of the other party, including, but not limited to the following, shall constitute confidential and proprietary information ("Proprietary Information") unless otherwise voluntarily disclosed to the public…(b) with respect to SW:  SW information files, business operations and strategies. Neither party shall use the other's Proprietary Information or disclose it to any third party, at any time during or after the termination of this Agreement, except as specifically contemplated by this Agreement upon prior written consent.'" <br><br> (SW Compl. at ¶ 12). | "ESI is prohibited under common law and otherwise contractually prohibited from using confidential and proprietary business information it acquired through the PDPA. Pursuant to Section 5.2 of the PDPA, through which ESI acquired the information: <br><br> ‘Each party agrees that information of the other party, including, but not limited to the following, shall constitute confidential and proprietary information ("Proprietary Information") unless otherwise voluntarily disclosed to the public…(b) with respect to SW:  SW information files, business operations and strategies. Neither party shall use the other's Proprietary Information or disclose it to any third party, at any time during or after the termination of this Agreement, except as specifically contemplated by this Agreement upon prior written consent.'" <br><br> (Meritain Compl. at ¶ 29). |
| "SW's pricing, just like that of the third party vendor with whom SW renegotiated its contract after the Aetna acquisition, varies by client.  It is dependent upon certain information files, business operations and strategies, including: <br><br> (a) SW's break-even point for purchasing | "SW's pricing for Meritain's clients varies on a client-to-client basis.  It is dependent upon certain information files, business operations and strategies, including: <br><br> (a) SW's break-even point for purchasing prescription drugs; (b) the size of the client; (c) |

9

| SW Complaint | Meritain Complaint |
|---|---|
| prescription drugs; (b) the size of the client; (c) the design of the client's benefit plan; (d) the length of the contract; (e) the particular needs of each client; (f) the location of the client; (g) the number of lives or members covered by the client; (h) historical data; (i) client contact information; (j) pricing margins; (k) information files; (l) business strategies; (m) operational information; and (n) past pricing models." <br><br> (SW Compl. at ¶ 13). | the design of the client's benefit plan; (d) the length of the contract; (e) the particular needs of each client; (f) the location of the client; (g) the number of lives or members covered by the client; (h) historical data; (i) client contact information; (j) pricing margins; (k) information files; (l) business strategies; (m) operational information; and (n) past pricing models." <br><br> (Meritain Compl. at ¶ 30). |
| "Absent this and other Proprietary Information, price-specific proposals, including the one made by ESI about saving clients $8 per prescription, are not possible." <br><br> (SW Compl. at ¶ 13). | "Absent the foregoing and other information, price-specific proposals, including the one made by ESI about saving clients $8 per prescription, are not possible." <br><br> (Meritain Compl. at ¶ 32). |
| "Indeed, SW entered into the PDPA with ESI for the precise reason that, based upon the information files, business operations and strategies disclosed by SW to ESI, it was clear that SW, utilizing its expertise in plan design, could leverage the fulfillment and administrative resources of ESI to provide cost effective pharmacy benefit plans to its clients." <br><br> (SW Compl. at ¶ 13). | "Indeed, SW entered into the PDPA with ESI for the precise reason that, based upon the information files, business operations and strategies disclosed by SW to ESI, it was clear that SW, utilizing its expertise in plan design, could leverage the fulfillment and administrative resources of ESI to provide cost effective pharmacy benefit plans to its clients." <br><br> (Meritain Compl. at ¶ 33). |
| "ESI was aware that the pricing proposals were based on SW's proprietary information at the time it began its campaign to poach SW's clients." <br><br> (SW Compl. at ¶ 14) | "ESI was aware that the pricing proposals were based on proprietary information at the time it began its campaign to poach Meritain's clients." <br><br> (Meritain Compl. at ¶ 34). |
| "In order to try to protect itself after having accessed and utilized SW's Proprietary Information to prepare the proposal and determine that it could charge $8 less per prescription, it emailed, concurrently with the pricing proposal, a form entitled Authorization to Use Claims Data to prepare Price Quote ("Authorization"), which ESI requested that each SW client execute, which states:" <br><br> (SW Compl. at ¶ 14). | "In order to try to protect itself after having accessed and utilized this proprietary information to prepare the proposal and determine that it could charge $8 less per prescription, it emailed, concurrently with the pricing proposal, a form entitled Authorization to Use Claims Data to Prepare Price Quote ("Authorization") which it requested that each client sign. The authorization states:" <br><br> (Meritain Compl. at ¶ 35-36). |
| "The Authorization document also contains a | "The Authorization document also contains a |

| SW Complaint | Meritain Complaint |
|---|---|
| clear indication that ESI was aware that contracts were in place between the client and SW and was trying to retroactively create a cover to protect ESI." <br><br> (SW Compl. at ¶ 15). | clear indication that ESI was aware that contracts were in place with the client and was trying to retroactively create a cover to protect itself." <br><br> (Meritain Compl. at ¶ 37). |
| "ESI has interfered with SW's contractual relationships with its third party clients by, among other things, disparaging SW by advising those clients that the pricing arrangements SW maintains with those clients are over-priced, and 'undercutting' SW by offering PBM services directly to those clients at price rates that it knows SW is unable to match, often at prices lower than those ESI is charging SW." <br><br> (SW Compl. at ¶ 25). | "ESI has interfered with Meritain's contractual relationships with its clients by, among other things, disparaging the PBM services and prices by advising those clients that the pricing arrangements are over-priced, and 'undercutting' Meritain by offering PBM services directly to those clients at price rates that it knows Meritain is unable to match, often at prices lower than those ESI was charging SW." <br><br> (Meritain Compl. at ¶ 43). |
| "There is no justification for ESI's employment of improper means – the prohibited use of SW's Proprietary Information – to solicit business from SW's existing clients." <br><br> (SW Compl. at ¶ 26). | "There is no justification for ESI's employment of improper means – theft of confidential and proprietary information and violation of trade secret laws – to solicit business form Meritain's existing clients." <br><br> (Meritain Compl. at ¶ 44). |
| Seeks a "a permanent injunction in its favor and against ESI, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, enjoining any communications, whether directly or indirectly, from ESI to any of SW's customers…and **requiring ESI to continue to perform under the terms of the PDPA** until it expires or is terminated." <br><br> (SW Compl. at ¶ 29(a)) (emphasis added). | Seeks "a permanent injunction in its favor and against ESI, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, enjoining any communications, whether directly or indirectly, from ESI to any of Meritain's customers and **requiring ESI to continue to perform under the terms of the PDPA**." <br><br> (Meritain Compl. at ¶ 50(a)) (emphasis added). |
| Asks the Court to enjoin any communications whether "directly or indirectly, from ESI to any of SW's customers that rely on or otherwise make use of SW's Proprietary Information, as that term is defined in the PDPA." <br><br> (*Id.*). | Asks the Court to enjoin ESI from "directly or indirectly soliciting the clients of Plaintiff (**or its affiliate Scrip World, LLC** ("SW")) that ESI serviced through the Prescription Drug Program Agreement ("PDPA") identified in Plaintiff's Complaint; and (b) form otherwise using in any manner any confidential information ESI acquired in connection with providing services to such clients under the PDPA." |

11

| SW Complaint | Meritain Complaint |
|---|---|
| | (Meritain Compl., Proposed Order (Doc. No. 3-1 at ¶ 1) (emphasis added). |

ESI believes these claims have no merit.  The evidence will show that the pricing proposals that Meritain and SW allege are based on their data, are in fact standard ESI pricing proposals, not cost comparisons based on SW or Meritain information.  But even if the proposals were based on data that ESI obtained through the PDPA, the use of that data to provide cost analyses or cost comparisons to third parties could not support a claim because SW explicitly granted ESI "permission" to use such information "both during and after the term" of the PDPA "and/or to transfer to third parties" for "cost analysis, cost comparisons or other business purposes of ESI."[24]  Consistent with this "permission," the PDPA does not include any non-solicitation provisions and the only "drug pricing information" that the PDPA defines as "Proprietary Information" is ESI's pricing information.[25]

These are issues that will have to be resolved by any court addressing this dispute.   They will have to be addressed by the court in St. Louis, Missouri, which will resolve the declaratory judgment action pending against SW.  They will have to be addressed to resolve SW's rights and obligations under the PDPA, as raised in the original action SW filed in St. Louis, Missouri.  And they will have to be

---

[24] Ex. 2, 2005 PDPA, Section 3.4(c) attached as Ex. A to SW Compl., Ex. 1.

[25] *Id*. at Section 5.2.

12

addressed to resolve whatever rights or claims Meritain may have, since Meritain's

claims are inextricably tied to SW, ESI, and the PDPA.    In a telling dialogue with

this Court, Meritain's counsel conceded that its claims rise and fall with the PDPA,

and SW and ESI's obligations under the PDPA:

> THE COURT: So what are they suing on? What are they
> suing on then -- I'm sorry, what is Meritain suing on then, what are
> your counts and all?
>
> MR. SANTARELLI: It's very simple, two counts.
> Tortious interference with the relationship between us, Meritain, and
> our customers.
>
> THE COURT: And tortious interference -- okay but --
>  hold on for a second. Tortious interference because they're using
> proprietary information that they got from Meritain's affiliate
> pursuant to an agreement?
>
> MR. SANTARELLI: Yes.
>
> THE COURT: Okay. And your other count?
>
> MR. SANTARELLI: The other count is the trade secret
> violations. Because the information that they're using to tortiously
> interfere is the proprietary and confidential information that they
> obtained under these restrictions.[26]
> …
>
> THE COURT: **But was the wrongdoing by Express Scripts
> similar to what's the wrongdoing alleged here is?** I mean, the
> alleged wrongdoing, is it the same as what's alleged here?
>
>  MR. SANTARELLI: It was definitely similar. **It's
>  essentially the same conduct that they were engaged in is a
>  breach of contract**, but the real harm that as Mr. Dee said we can't
> bring on behalf of Meritain is the harm to the customer relationships.

---

[26] Jan. 12, 2012 Tr. at 16:1-16.

THE COURT: Why isn't that other entity an indispensable party, which would destroy subject matter jurisdiction?

MR. SANTARELLI: Because no damages or claims are being asserted on their behalf, nor are they necessary. I mean they're -- the damages here are to the customer relationships of Meritain.

THE COURT: No, I understand. **But the bad conduct was to violate that contract, right?** Because that's how they got these trade secrets, through the contract?

MR. SANTARELLI: **Yes, that -- the contract is evidence that there is a trade secret. It's evidence that it's considered confidential and proprietary.**

THE COURT: Okay.[27]

## ARGUMENT

Behind the thinly veiled cloak of Meritain's complaint is the truth that this case is—at its core—about the contractual relationship and obligations between SW and ESI under the PDPA.  Any resolution will necessarily define the rights and obligations of ESI and SW under the PDPA.

Meritain, whose is not a party to the PDPA, lacks standing to bring claims under the agreement.  That problem is not solved by recasting those claims as "tort" claims, particularly where the relief Meritain seeks is specific performance and requires a declaration of rights and obligations under the PDPA.

Even if Meritain had standing, this action cannot proceed without SW because the action seeks to define rights and obligations under SW's contract with

---

[27] *Id*. at 19:2-22 (emphasis added).

ESI.  This makes SW a necessary and indispensable party.  Because the addition

of SW would destroy diversity jurisdiction, this action must be dismissed.

> I.     **Meritain lacks standing to enforce the contract between SW and ESI.**

Even Meritain acknowledges that it does not have standing to pursue claims

on a contract to which it is not a party:

> THE COURT: Who wouldn't have standing? Meritain?
>
> MR. SANTARELLI: Meritain.
>
> THE COURT: Meritain wouldn't have standing to do what?
>
> MR. SANTARELLI: To bring a claim for breach of a contract that they're not a party to.[28] . . .
>
> MR. SANTARELLI: Then Scrip World went out and subcontracted to the Express Scripts. What Mr. Dee is saying is, Meritain can't sue Express Scripts because they're not a party to that contract.
>
> THE COURT: Well they can't sue on the contract for sure.
>
> MR. SANTARELLI: Exactly.[29]

But Meritain is attempting to sue "on the contract."   Although Meritain

does not bring a claim that is labeled, "breach of contract," the crux of this action

is that ESI owed and breached obligations under the PDPA.[30]  Indeed, Meritain

alleges that ESI is acting in breach of its confidentiality obligations under the

---

[28] Jan. 12, 2012 Tr. at 15:2-7.

[29] *Id*. at 15:19-25.

[30] *Supra*. at pp. 8-12.

PDPA, and seeks an order "requiring ESI to continue to perform under the terms of the PDPA."[31]  The relief Meritain seeks would necessarily require a declaration of rights and obligations under the PDPA.  In other words, regardless of its current "labels," Meritain is attempting to sue on the PDPA, and seeks relief on behalf of SW allegedly arising from obligations under the PDPA.[32]

*Gingiss Owners Association, Inc. v. The Gingiss Group, Inc.*, No. 02C7318, 2003 WL 22118929 (N.D. Ill. Sept. 11, 2003), is directly on point.  The Gingiss Owners Association ("GOA") attempted to bring an action in federal court to enjoin defendants from competing within the exclusive territories of plaintiff's members.  They claimed that defendant's competition was prohibited by a franchise agreement with the individual franchisees. 2003 WL 22118929 at *1.  GOA elected not to name the individual franchisees, or sue for "breach," because the addition of the contracting parties would destroy the court's diversity jurisdiction.  *Id.*  The district court saw through the ruse.

> Although GOA does not bring a claim that is labeled "breach of contract," the crux of the complaint is that defendants have breached the Franchise Agreements.  The GOA is not a party to the Franchise Agreements; rather, its members, the franchisees, are.  Thus, like the association in *NAR*, it is clear that the GOA is suing on behalf of its members.  While the GOA characterizes the harm as being inflicted

---

[31] *See, e.g.,* Meritain Compl. (Doc. No. 1) at ¶ 29 (quoting Section 5.2 of the SW PDPA and alleging that under the agreement ESI is "contractually prohibited from using confidential and proprietary information it acquired through the PDPA"); ¶ 31 ("ESI acquired virtually all of the foregoing information…through the restricted access ESI was provided under the PDPA."; ¶ 50(a) (requesting a permanent injunction "requiring ESI to continue to perform under the terms of the PDPA" with SW);

[32] Meritain Proposed Order (Doc. No. 3-1) at ¶ 1 (asking this Court to enter an order enjoining ESI from soliciting clients of Meritain "or its affiliate Scrip World, LLC.").

> upon itself rather than the franchisees (by way of fewer members, and therefore reduced dues and participation), the complaint fails to identify any right that the GOA *itself* possesses that is allegedly being violated…The GOA is not a party to the contracts it seeks to enforce… The GOA's members—the franchisees—are the real parties in interest to this controversy and it is their citizenship that controls for diversity jurisdiction purposes. . . . Because each defendant is a citizen of either Illinois or California, complete diversity is destroyed, and this court is without subject matter jurisdiction.

*Gingiss Owners Assoc., Inc*. 2003 WL 22118929 at *3.

The same is true here.  The crux of this action is that ESI allegedly breached contract obligations under the PDPA with SW.   SW, like ESI, is a citizen of Delaware, and cannot bring claims in this court because there is no diversity jurisdiction between two citizens of the same state.   SW cannot avoid this problem by using Meritain as a ruse to pursue relief for SW under the PDPA.  *Id*.; *see also Aguinaga v. UBS AG & UBS (Bahamas) Ltd*., No. 09-CIV-03261, 2010 WL 5093433 (S.D.N.Y Dec. 14, 2010) (explaining that, although plaintiff did not label counts as a breach of contract, the claims were based on alleged breaches in contracts with non-parties who were the real parties in interest.  Because the addition of the actual parties to the contract would have destroyed diversity jurisdiction, the claims were dismissed); *Delor v. ATX Telecom Servs., Ltd*., No. CIV.A-96-2462, 1996 WL 355334 at *2 (E.D. Pa. June 25, 1996) ("Under Pennsylvania law, a person cannot enforce contractual rights unless that person was a party or privy to, or an intended third party beneficiary of, the contract giving rise to those rights.  As Delor bases his action on rights arising under the

17

contract, he is a real party in interest only if he was a party or privy to, or an

intended third party beneficiary, of the contract…Delor's status as a real party in

interest turns on whether he was a party to the contract...As Delor has no rights

under the contract, he must substitute CEI as the plaintiff in this action or face

dismissal of the amended complaint.") (citations omitted); *City of Kansas City v.*

*Milrey Dev. Co*., 600 S.W.2d 660, 664 (Mo. Ct. App. 1980) ("obligations arising

out of a contract are due only to those with whom it is made; a contract cannot be

enforced by a person who is not a party to it or in privity with it.") (citation

omitted).[33]     Accordingly, this action must be dismissed.

---

[33] Moreover, The PDPA defines a "Client" as "an employer, union or self-insured health plan **that has contracted with SW** for PBM Services **under a SW Client Agreement**." Ex. 2, 2005 PDPA, Article 1, attached as Ex. A to SW Compl.   "SW Client Agreement" is defined as "a written agreement between a Client **and SW** for the provision of PBM Services."  Accordingly, the only "Clients" and client relationships even contemplated by the SW PDPA are those with SW, not Meritain.  Under the PDPA, Mertain is a legal stranger to these relationships. This is an additional basis to dismiss Meritain's claims, and further evidence that Meritain is not the real party in interest.  *See, e.g., Diesel Sys. Inc. v. Yip Shing Diesel Eng'g Co*., 861 F.Supp. 179, 181 (E.D.N.Y.  1994) (holding that a New York corporation was not the real party in interest and lacked standing to sue for tortious interference with a contract between its sister corporation and third-party suppliers; "It is axiomatic that a plaintiff 'generally must assert his own legal rights and cannot rest his claim to relief on the legal rights or interests of third parties.'  Here DSL-NY is a legal stranger to the contract and business relationships that were allegedly interfered with.  DSL-NY's sister corporation, DSL-HK, is the actual party to the contract…A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined.") (citations omitted).  The same is true here, since the only client relationships even contemplated by the PDPA are with SW and its clients, not Meritain.

**II.    SW is a necessary and indispensable party, and this action must be dismissed, because SW cannot join this action without destroying diversity jurisdiction.**

Meritain has conspicuously chosen not to join SW as a party to this action, despite the fact that its claims are based on SW's contractual relationship with ESI, that it is asking this Court to define ESI and SW's obligations under the PDPA, and despite the fact that it purports to seek relief directly on SW's behalf.  In doing so, Meritain has run afoul of Fed. R. Civ. P. 19, which requires that necessary parties be joined when feasible, and compels dismissal of the complaint where such parties are indispensable but cannot feasibly join the action.  *See* Fed. R. Civ. P. 19; *see also* Fed. R. Civ. P. 12(b)(7); *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 706-707 (3d Cir. 1996) (non-diverse receiver was a necessary and indispensable party requiring dismissal of action to collect insurance proceeds); *Develcom Funding, LLC v. American Atlantic Co.*, No. 9-1839, 2009 WL 2923064 (D. N.J. Sept. 9, 2009) (action seeking specific performance of contract had to be dismissed where non-diverse parties interests could be impacted by federal action); *Johnson & Johnson v. Coopervision, Inc.*, 720 F.Supp. 1116 (D. Del. 1989) (non-diverse plaintiff subsidiary was indispensable party to litigation where it had played an important role in negotiating an agreement, requiring dismissal under Fed. R. Civ. P. 19(b)).

In deciding whether an action must be dismissed for failure to join a party pursuant to Rule 19, the Court must determine whether: (1) an omitted party is necessary pursuant to Rule 19(a), and, if so, (2) whether the omitted party is

indispensable under Rule 19(b).  *Id*.  Where, as here, a necessary and

indispensable party cannot be joined without destroying complete diversity, the

Court must dismiss the action.  *Id.*

### a.  SW is a necessary party under Fed. R. Civ. P. 19(a).

SW is a necessary party if, in its absence, (1) complete relief cannot be

accorded the present parties, or (2) disposing of this action in SW's absence would

either (a) impair the absent party's ability to protect its interests, or (b) leave an

existing party, like ESI, subject to a substantial risk of incurring double, multiple,

or otherwise inconsistent obligations.  Fed. R. Civ. P. 19(a).  Rule 19(a) is satisfied

if a party's absence "results in *any* of the problems identified in the rule."  *Angst*,

77 F.3d at 706 (emphasis added).

Meritain is asking this Court to order ESI to perform under the PDPA,

according to Meritain's interpretation of that agreement—in effect, specific

performance.  The relief Meritain is requesting would necessarily require this

Court to rule on the enforceability of the PDPA, and the rights and obligations it

created between ESI and SW.  These requests necessarily impair the parties' rights

and obligations under the PDPA.  Because SW, not Meritain, is a party to the

PDPA, and this action intends to determine SW's rights, SW is the quintessential

"necessary" party.  *See, e.g., Develcom Funding, LLC v. American Atlantic Co*.,

2009 WL 2923064 at *3 (in action seeking specific performance, party affected by

the proposed relief is a necessary and indispensable party); *B. Fernandez & Hnos,

Inc. v. Kellogg USA, Inc*., 440 F.3d 541, 548 (4th Cir. 2006) ("[A]t least one thing

20

is clear:  Kellogg Caribbean is indispensable insofar as appellees seek an injunction that affects Kellogg Caribbean's interests under the agreements."); *H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 993 (1st Cir. 1986) (non-diverse parent company was necessary and indispensable where it was a signatory to agreements that formed the basis for key claims at issue); *Hi-Tech Gaming.Com, Ltd. v. IGT*, No.2:08-CV-00244, 2008 WL 4952208, *6 (D. Nev. Nov. 18, 2008) (finding wholly-owned subsidiary a necessary and indispensable party where it was the signatory to the agreement allegedly breached; "Further, any judgment rendered in IGT Canada's absence will be inadequate because IGT Canada was a party to the contract Plaintiffs allege was breached."); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.").

It is not hard to see why proceeding without SW could easily give rise to inconsistent results and multiply proceedings.  If Meritain loses, SW may try to argue that it is not bound by the judgment and bring its own action on the same terms as the St. Louis County action it dismissed "without prejudice," attempting to collect essentially the same damages and pursue the same claims in a new forum.  *Coopervision, Inc*., 720 F. Supp. at 1122.    Alternatively, because this Court necessarily has to determine SW and ESI's rights and obligations under the PDPA, SW could find itself bound without a voice.  *Id*.  And because SW is not a

21

party to this action, and beyond this Court's jurisdiction, it may not be compelled to testify at any trial even if its binding admissions are fatal to the contract theories that Meritain is trying to advance.  ESI would be hamstrung in pursuing legitimate defenses to the key contract theories being advanced by Meritain.  Finally, there is a substantial risk of inconsistent outcomes and obligations, as the contract claims at issue will also be decided by the state court action in Missouri, where SW is a party.  Indeed, the same issues underlie both actions.  Under these circumstances, SW is a textbook "necessary" party under Rule 19(a).

### b.  *SW is an indispensable party under Fed. R. Civ. P. 19(b).*

Not only is SW a necessary party, SW is an indispensable party under Rule 19(b).  Rule 19(b) sets forth four overlapping factors to be evaluated by courts in considering whether an absent party is indispensable.  *See* Fed. R. Civ. P. 19(b) (explaining that the court should consider (1) whether a judgment rendered in the person's absence could prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder); *Coopervision, Inc*., 720 F.Supp. at 1123; *Develcom Funding, LLC*, 2009 WL 2923064 at *3. Four constituencies are to be considered in evaluating the Rule 19(b) factors: (1) the defendant; (2) the absent party; (3) the courts and the public; and (4) the plaintiff.  *Coopervision, Inc*., 720 F.Supp. at 1123 (citing *Provident Tradesmens Bank v. Patterson*, 390 U.S. 102, 109-111 (1968)).

22

Again, as the defendant, ESI faces substantial harm if SW is not a party to any action regarding its performance and obligations under the PDPA, and could be forced to pay twice, once to Meritain, and then a second time to SW, for the same allegedly wrongful act. Even if there are no inconsistent or duplicative judgments that would impact ESI, "simply having to litigate twice that which could be decided in a single proceeding imposes an unnecessary burden upon [ESI]." *Coopervision*, *Inc.*, 720 F. Supp. at 1125. Also, as previously discussed, SW's absence would necessarily impair ESI's ability to fairly and fully assert its defenses to the contract allegations that underlie this dispute. *Id*.

As the absent party, SW faces similar risks. SW is the signatory to the contract at issue. Even if SW is not legally bound by an adverse determination of those rights in its absence, the authority created would, nonetheless, be adverse persuasive precedent that would be used against it. *Id*. The fact that SW and Meritain are "affiliated" companies does not mean that SW's interests are adequately protected by Meritain's involvement in this case. Indeed, Meritain's key theory—that the clients at issue are its asset, not SW's—not only contradicts the PDPA, but is adverse to SW's interests and the position SW took in the action SW brought against ESI. Numerous courts agree that under these circumstances a party like SW is indispensable. *See, e.g., Coopervision*, *Inc*., 720 F. Supp. at 1125 (collecting cases; finding that even in the context of a parent-subsidiary relationship the subsidiary's interests would not be protected by its parent company so as to negate indispensability); *Kellogg USA, Inc*., 440 F.3d at 548;

*Ford Motor Co.*, 791 F.2d at 993 (same); *Hi-Tech Gaming.Com, Ltd.*, 2008 WL 4952208, *6 (same); *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir. 1982) (action properly dismissed where parent corporation was a party to the contract, and therefore indispensable.); *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70 (2d Cir. 1984).

The most prudent solution is to allow these claims to be resolved in a forum where SW is present, and Meritain can intervene if it so desires.  *Coopervision*, *Inc.*, 720 F.Supp. at 1126; *Envirotech Corp.*, 729 F.2d at 76 ("Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court.").   That forum is St. Louis County, Missouri, where SW previously filed virtually identical claims and where ESI's declaratory judgment action against it is pending.

The third of the four interests promoted by Rule 19(b) are those of the courts and the public.  "The most palpable interest of this constituency is in having disputes resolved in the most efficient manner possible."  *Coopervision*, *Inc.*, 720 F. Supp. at 1126.    Meritain has offices in St. Louis County.[34]  Nothing would prohibit Meritain from moving to intervene in the pending St. Louis County action.  Indeed, St. Louis County is the only forum with any connection to this case that could conceivably resolve the claims of all interested parties in one

---

[34] *See infra*. at n.40.

setting.   This heavily favors Rule 19(b) dismissal, particularly since the contract at issue is governed and will be resolved based on Missouri law, and there is already a pending action in Missouri.  While this Court is certainly capable of applying Missouri law, the availability of one forum to efficiently decide these issues with all necessary parties present would certainly "advance the public's interest in the efficient administration of justice." *Id*. at 1127.  Conversely, "surging forward in this forum-with one of the key players missing-would not promote such an interest" but would "spawn repetitious litigation because this Court cannot resolve the entire dispute." *Id*.

The final constituency to be considered is the plaintiff, Meritain.  Meritain has clearly indicated its preference to proceed in the Eastern District of Pennsylvania:

> (1) despite the fact that there are no substantial ties to this forum;

> (2) despite the fact that the underlying events did not originate here or that the majority of the witnesses will be in Missouri, where ESI is based and Meritain has offices;

> (3) despite the fact that the contract at issue is governed by Missouri law; and

> (4) notwithstanding the fact that there is parallel litigation proceeding in a Missouri forum capable of granting complete relief to all interested parties.

While dismissal might inconvenience Meritain's chosen Philadelphia counsel, that inconvenience is not an undue inconvenience to Meritain, a New York corporation, and is a factor that should be given little or no weight.  *See*

*North American Dental Wholesalers, Inc. v. Danaher Corp.*, 2011 WL 3606866

n.2 (E.D. Pa. 2011).

In summary, the interests of ESI, SW, as well as those of the public and the

courts clearly favor dismissal.  And while Meritain may argue otherwise, there is

no legitimate reason why it cannot act to protect its interests in the litigation

pending with SW in Missouri, the only forum positioned to possibly resolve this

entire dispute.  Indeed, the Third Circuit has considered the availability of an

alternative forum as dispositive on the Rule 19(b) analysis.  *See Agnst*, 77 F.3d at

706.

"Like a tripod with one missing leg, [SW's] absence causes this lawsuit to

topple over…"  *Id*. at 1128.   SW cannot be added to this matter, because doing so

would destroy this Court's diversity jurisdiction.  Accordingly, because all four of

the Rule 19(b) factors favor dismissal, there is no question that doing so is

consistent with "equity and good conscience."  *Develcom Funding, LLC*, 2009 WL

2923064 at *5.

###### III.    In the alternative, if this action is not dismissed, it should be transferred to the Eastern District of Missouri.

Although Rule 19 requires dismissal in this case, if this Court does not

reach the Rule 19 issues, it should, at a minimum, transfer to the Eastern District

of Missouri pursuant to 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to

26

any other district or division where it might have been brought."  A defendant

must demonstrate that (1) the case could have been brought initially in the

proposed transferee forum; (2) the proposed transfer will be more convenient for

the parties and witnesses; and, (3) the proposed transfer will be in the interest of

justice.  *See id.*; *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995);

*North American Dental Wholesalers, Inc. v. Danaher Corp.*, 2011 WL 3606866, 3

(E.D.Pa. 2011).

Once the defendant establishes that the action could have been brought in

the proposed district, the court must weigh several private and public interest

factors to determine whether the balance of conveniences tips in favor of transfer,

including: (1) the plaintiffs' choice of forum; (2) the defendant's preferred forum;

(3) the place where the claim arose; (4) the relative ease of access to the sources of

proof; (5) the convenience of the parties as demonstrated by relative financial

status and physical location; (6) the availability of compulsory process for the

attendance of witnesses; (7) the convenience of the witnesses; (8) the practical

problems that make trial of a case expensive and inefficient; and, (9) "public

interest" factors, such as congestion of court dockets and the relationship of the

jury and the community to the underlying district.  *North American*, 2011 WL

3606866 at 3.  In diversity cases, courts may also consider "the familiarity of the

trial judge with the applicable state law[.]"  *Bromily, Inc. v. State Nat. Ins. Co.,*

*Inc.*, 2008 WL 351908, 3 (E.D. Pa. 2008) (citing *Jumara v. State Farm Ins. Co.,*

55 F.3d 873, 879 (3d Cir. 1995)).

27

*North American Dental Wholesalers, Inc. v. Danaher Corp.*— an action which also alleged unfair competition and tortious interference with business expectancy—is on point.   2011 WL 3606866 at 3.  North American Dental Wholesalers, Inc. ("NADW") claimed damages stemming from alleged false statements contained in letters sent by Danaher to NADW's retail customers in the United States and Canada.  *Id.* at 1-3.

The defendants moved to transfer venue from the Eastern District of Pennsylvania to the Central District of California under 1404(a).  *Id.* at 3.  The Court explained that it would *not* give deference typically afforded to the plaintiff's choice of forum because Pennsylvania was not NADW's home forum and the central actions giving rise to the complaint did not occur in Pennsylvania.[35]  *Id.* at 4.  Instead, the court concluded the operative facts giving rise to the NSDW's claims occurred in California where the communications originated, a factor which weighed in favor of transferring venue.  *Id.*

Because the court gave less deference to NADW's choice of forum, it concluded it should give more weight to the defendant's choice of forum – California.  *Id.* at 5.  In addition, the court considered the relative access to evidence and witnesses, that consolidation with a similar pending action in California would eliminate the wastefulness of duplicative proceedings, and that

---

[35] Relevant to the current action, the *North American Dental* court also noted the only connection the plaintiff had to the Eastern District of Pennsylvania – outside of distributing some of its products in Pennsylvania – was the presence of its counsel, a factor not properly considered.  *See North American Dental*, 2011 WL 3606866 at n.2 (citing *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir.1973)).

28

California had a more substantial public interest in resolving a dispute involving the conduct of business headquartered in California.  *Id.* at 5-6.  Accordingly, the court granted the motion to transfer.  *Id.* at 7.

The same is true here.  As a threshold matter, it is indisputable Meritain could have filed its Complaint in Missouri, where Express Scripts is located and a substantial part of the events giving rise to complaint occurred.  *See* 28 U.S.C. 1391(a)(1)&(2) ("A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides . . . [or] (2) a judicial district where a substantial part of the events . . . giving rise to the claim occurred . . . [.]").[36]

Moreover, the 1404(a) factors clearly demonstrate that the Eastern District of Missouri is more convenient for the parties and witnesses, and is in the interest of justice:

### a.   *Meritain's choice of forum should be given little deference.*

Meritain's home forum is in Amherst, New York.[37]  None of the alleged events giving rise to the complaint occurred in the Eastern District of Pennsylvania.  Other than the fact that the Elliot Greenleaf law firm is located

---

[36] Indeed, just two days prior to filing the current action, Meritain's sister corporation, SW, filed a virtually identical case in the St. Louis County Circuit Court (located within the Eastern District of Missouri).  *See* Ex.1, SW Compl.  In that complaint, SW admitted that "venue is proper as Defendant maintains its headquarters in St. Louis County, Missouri and the contract which forms the basis for the claims in this lawsuit was entered in to in St. Louis County." SW Compl. at ¶ 3. The allegations in Meritain's complaint involve the exact same clients, the exact same contract, and the exact same communications as those alleged in SW's complaint.

[37] *See* Meritain Compl. at ¶ 3.

here, the only connection even alleged by Meritain is the presence of approximately "3000 individual members" in the state of Pennsylvania.[38]  Yet even Meritain's own website boasts that it has a "million plus members" throughout the United States - including Missouri - so the location of 3000 plan members (who are not even potential witnesses in a case alleging improper communications with health plan sponsors) makes Pennsylvania no more or less proper than any other United States jurisdiction.  In sum, Meritain is forum shopping, so its choice should be given no deference, and the court should look to ESI's preferred forum, Missouri.

> **b.    *The alleged events giving rise to the Complaint occurred in St. Louis, Missouri.***

Meritain alleges damage from communications that originated from ESI's headquarters in St. Louis, Missouri.[39]  This factor, as well as the relative ease of access to any relevant documents or witnesses involved with the subject communications, clearly favors Missouri.

> **c.    *Meritain will not be unduly burdened by litigating in Missouri.***

Meritain is a nationwide company with offices throughout the country, including St. Louis, Missouri.[40]  Indeed, its sister company SW previously filed a

---

[38] *Id*. at ¶ 2.

[39] *See* Complaint at ¶¶ 24-25 & Ex. 1 and 2 thereto, (indicating the sender address at the bottom of the alleged wrongful communication as "One Express Way, St. Louis, MO 63121"); *see also North American*, 2011 WL 3606866 at 5 (tortious interference and other claims caused by sending letters arose in place from which communications were sent).

[40] *See* Ex. 4 (listing a service center for Meritain in Missouri, but not in Pennsylvania)

SLC-6538441

virtually identical lawsuit in St. Louis County, Missouri, and conceded venue was

appropriate.[41]   Accordingly, there is no reason why litigating in Missouri would be

overly burdensome to Meritain.

> ### d.     All other factors favor Missouri.

 In addition to the above factors, the Court should also consider the fact that

a lawsuit between ESI and Meritain's sister corporation, SW, is pending in St.

Louis County Circuit Court involving the same underlying issues addressed in this

litigation.  At minimum, coordination of depositions and document production in

those two cases could help minimize wasteful duplication of efforts and promote

judicial economy.  In addition, Missouri has a policy interest in resolving a dispute

involving the conduct of the individuals residing within its jurisdiction, unlike

Pennsylvania, who has little connection to the parties or this dispute.  2011 WL

3606866 at *5-6.

In sum, all factors favor venue in Missouri over Pennsylvania.  While

transfer to the Eastern District of Missouri will not cure the Rule 19(b) issues

caused by SW's absence, it is the appropriate venue if any part of this case were to

continue.  Accordingly, in the event this Court does not dismiss Meritain's

complaint, it should transfer venue to the United State District Court for the

Eastern District of Missouri.

---

[41] *See supra.* n.36.

## CONCLUSION

This action is being prosecuted by the wrong plaintiff in the wrong forum. Mertain is suing to enforce rights and obligations stemming from a contract to which it is not a party. And regardless of how Meritain may label its counts, it is seeking specific performance and asking this Court to declare rights and obligations under the PDPA. SW, not Meritain, is the proper party to bring these claims. Even if Meritain had some independent basis to bring claims stemming from ESI's performance under the PDPA, it cannot equitably do so without joinder of the parties who will necessarily be impacted by the relief it seeks. Those parties are the parties to the contract at issue—SW and ESI. SW cannot be joined because, like ESI, it is a citizen of Delaware, and its joinder would destroy this Court's diversity jurisdiction. Under these circumstances, Rule 19 requires dismissal.

For all of the reasons stated above, ESI respectfully requests that the Court grant ESI's motion and dismiss Meritain's complaint, or in the alternative, transfer this action to the United States District Court for the Eastern District of Missouri.

Dated: January 20, 2012          Respectfully Submitted,

                                       **COZEN O'CONNOR**

                                       /s/ Robert V. Dell'Osa
                                       Robert V. Dell'Osa (Attorney No. 44281)
                                       1900 Market Street
                                       Philadelphia, PA 19103
                                       (215) 665-2745 - Telephone
                                       (215) 665-2013 – Facsimile

**HUSCH BLACKWELL LLP**
Thomas M. Dee (*pro hoc to be filed*)
Christopher A. Smith (*pro hoc to be filed*)
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-1530
(314) 480-1500 - Telephone
(314) 480-1505 - Facsimile

*Attorneys for Defendant Express Scripts, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon Counsel of Record, this 20th day of January, 2012, to the addressees shown below:

John M. Elliott
Frederick P. Santarelli
John P. Elliott
Elliott Greenleaf & Siedzikowski, P.C.
Union Meeting Corporate Ctr. V
925 Harvest Drive
Blue Bell, PA 19422
(215)997-1000

*Plaintiff's Counsel*

/s/ Robert V. Dell'Osa
Robert V. Dell'Osa
**COZEN O'CONNOR**

33